LONG ET AL. *v.* BOARD OF ZONING APPEALS,
ETC., ET AL.

[No. 19,074. Filed May 21, 1962. Rehearing denied
June 21, 1962. Transfer denied December 5, 1962.]

*Sherwood Blue* and *Janet Roberts,* of counsel, both of Indianapolis, for appellants.

*Max Klezmer, James W. Treacy, John J. Dillon,* City Attorney, *John P. Korbly, M. Walter Bell, Michael B. Reddington,* Corporation Counsel, and *Stanley Talesnick,* all of Indianapolis, for appellees.

GONAS, J.—Indianapolis City ordinance provides that premises in a Class U-3, or business district, may be used for drive-in or curb-service establishments when on a lot determined by the Board of Zoning Appeals, after public notice and hearing, to be so located that such building, structure or use will, in the judgment of the Board, substantially serve the public convenience and welfare, and will not substantially or permanently injure the appropriate use of the neighboring property.

Appellee Schahet petitioned the Board for such a determination, and the Board made a determination in his favor.

The court below reviewed the decision by certiorari and found and adjudged that it was legal in all respects, and affirmed the same.

Appellant says that there was no evidence before the Board from which the Board could determine that the lot was so located that the proposed building and use will "substantially serve the public convenience and welfare, and will not substantially or permanently injure the appropriate use of the neighboring property." Appellant further argues that the Board was required to make findings of fact and did not do so.

The relief sought by appellee Schahet was an exception pursuant to the terms of the Zoning Ordinance and not a variance, although sometimes the two terms

have been used indiscriminately. 101 C. J. S., Zoning §271, p. 1034; §272, p. 1037; Am. Jur. Zoning §196, p. 1046 Anno.; 168 A. L. R. 13, p. 20.

It is not necessary to show that "practical difficulties" or "unnecessary hardship" would result if the exception is not granted. The conditions permitting an exception are those which are found in the ordinance itself. *Keeling* v. *Board of Zoning Appeals* (1947), 117 Ind. App. 314, 69 N. E. 2d 613, 101 C. J. S. Zoning §273 p. 1037.

Appellant takes the position that the Board was required to make a special finding of the facts upon which is based the granting of the exception, and cites in support thereof, decisions of this court and our Supreme Court dealing with various administrative bodies. In each of these cases a statute dealing with such bodies specifically required a finding of facts. There is no such statute involved here. Burns' Stat. §53-777 formerly required that;

"The board shall keep minutes of its proceedings ... prepare findings ..."

It was amended in 1951 to eliminate any reference to findings. Appellant has presented no authorities, and we have found none in this state indicating that a special finding of facts is required in the absence of a statute. Further argument is made, as we understand it, that the failure to make special findings is a violation of constitutional requirements as to "due process". Appellant's brief is such that we do not consider the argument to be a cogent and specific one, nor are any pertinent authorities cited, and a constitutional question, in our opinion, is not presented. Had a question been duly presented of rights guaranteed by the state or federal constitutions, then

this court would have been without jurisdiction to decide the same. The Supreme Court has exclusive jurisdiction as to such matters in appeal from courts. Burns' Stat. §4-214. We recognize that in trials by courts, general findings are made more often than special findings. The fact that general findings are made instead of a special finding of facts does not prevent a consideration on appeal as to whether the decision is sustained by sufficient evidence. As a matter of fact, the decision of the Board does not appear in the briefs herein. Appellant has set forth under the heading of "Finding of Board of Zoning Appeals", what appears upon examination to be merely a letter of notification from the Executive Director of the Board to the attorney for appellee, Schahet, advising of the action of the Board at its meeting.

At the hearing before the Board, evidence was introduced to the effect that the real estate involved here is located at the southwest corner of West 16th Street and Tremont Street in Indianapolis, and was zoned for business. It was being used as a used car lot. Directly across the street to the north was a bar and restaurant and there was a grocery store west of that. Across the street to the east was a bakery and adjacent to that was "The Pole" drive-in. West of the property there was an alley and then a parking area and service station. A sketch of the proposed building, a plat plan of the area, and photographs of the area were placed in evidence along with the consents of two property owners. There was also evidence on behalf of appellee Schahet that the proposed structure would be a modern glass and masonry structure with the ground blacktopped and property

surfaced, and fenced, and that the city Traffic Engineering Department generally approved the lay-out.

Appellant's evidence, the weight of which, and the credibility of the witnesses being for the board to determine, was to the effect that to grant the exception would cause an increase in traffic with accompanying noise and there might be a police problem involved in "car-hopping" among young patrons of the establishment if an additional drive-in was permitted in the area. The owner of the bakery testified that another drive-in in the area would adversely effect his business. One householder testified that he thought the proposed drive-in would cause a depreciation in the values of his property and surrounding property, but we are unable to tell from the evidence as set forth in the briefs just where his property is located.

In the case of *West Hartford Methodist Church* v. *Zoning Bd. of Town of West Hartford* (1956), 143 Conn. 263, 121 A. 2d 640, there was involved a regulation similar to the ordinance involved here. The Zoning regulation permitted the Zoning Board to grant an exception in certain cases, but only if, in the judgment of the Board, that the public convenience and welfare would be substantially served and the appropriate use of neighboring property would not be substantially or permanently injured.

The court stated;

"These conditions set up a test for the guidance of the board, and since the validity of the test has not been challenged, we shall assume that it is sufficiently definite to be a valid delegation of legislative authority. . ."

"The first condition of the test is that public convenience and welfare will, in the judgment of the board, be served. 'Public convenience' is not used in a colloquial manner. It is not synonomous with 'handy'. The word 'convenience' connotes that

which is suitable or fitting and 'public convenience' refers to what is fitting or suited to the public need." See *Abbott* v. *Public Utilities Commission*, 48 R. I. 196, 136 At. 490. The term 'public welfare' cannot be precisely defined. Sometimes it has been said to include public convenience, comfort, peace and order, prosperity, and similar concepts. . . . Opinion of the Justices to the Senate, Mass., 128 N. E. 2d 557, 561."

Considering, as the trial court was required to do, the evidence most favorable to the decision of the board, including the present use of the property in question, its proposed use, and the use being made of neighboring property, we cannot say, as a matter of law, that the board acted unlawfully, arbitrarily or unreasonably. The evidence was sufficient to sustain a finding that the proposed structure or use will substantially serve the public convenience and welfare and will not substantially or permanently injure the appropriate use of the neighboring property. *Keeling* v. *Board of Zoning Appeals, supra.*

. There is some discussion in appellant's brief about the variance of a building-line requirement. We find no mention of such matter anywhere in the briefs except in a letter written by the Executive Director of the Board. What if any action the board was requested to take or did take along this line does not appear, and no question is presented as to this.

Judgment affirmed.

Pfaff, J., concurs.

Kelley, P. J., concurs in result.

Bierly, J., dissents with opinion.

### DISSENTING OPINION.

BIERLY, J.—I am unable to concur in the majority opinion of this court.

This cause came for consideration by this court on a Writ of Certiorari addressed to the Board of Zoning Appeals for the City of Indianapolis to review a decision as of the date of October 26, 1956 in the Zoning Board Case No. 450-56 and entitled "Sam S. Schahet." Appellee, Sam S. Schahet, received from said Board a variance which nullified in that particular the classification of the U-3 Zone.

Issues were formed by Petition by Appellants "as supplemented for Writ of Certiorari to the Board of Zoning Appeals" of Indianapolis, and also by return to the aforesaid Writ, including the original petition of Sam S. Schahet, appellee, to the Board of Zoning Appeals as set forth at length seeking a variance of the U-3 Zone classification.

Allegations by appellants as set forth in this petition and embodied in their action for Writ of Certiorari to the Board of Zoning Appeals were to the effect that the decision of the Board in granting "the Petition for variance to the Appellee was illegal, and that the Board in granting the petition and permission acted in a capricious, arbitrary and illegal manner."

The return to the Writ of Certiorari was filed in accordance with the conditions set forth and a hearing was held thereon.

The Superior Court of Marion County, Room No. 5, supported the findings of the Board of Zoning Appeals and affirmed the decision of said Board October 26, 1954.

Inasmuch as the classification of "U-3" of the Section of the Zoning Code is the pertinent portion in dispute, we quote Section 11-112 (b) (6) :

(b) "U3 Uses Subject to Specified Requirements. In a Class U3 or business district, a building or structure or part thereof may, however, be erected, altered or used, or premises used in whole or in part which is arranged, intended or designed for any of the following enumerated uses when on a lot determined by the Board of Zoning Appeals, after public notice and hearing, to be so located that such building, structure or use will, in the judgment of said Board, substantially serve the public convenience and welfare, and will not substantially or permanently injure the appropriate use of the neighboring property, to-wit:

(6) Premises, building, or structures commonly known as "drive-in" or "curb-service" establishments, where food, beverages, ice cream or other refreshments are served to parked cars for consumption at the place of service."

I am unable to agree with my learned colleagues approving the majority opinion, as I perceive the Ordinance (U-3) obligates the Board, prior to granting the petition for a variance in favor of appellee Schahet, to determine subsequent to the submission of evidence before it by the petitioner-appellee, and the respondent, that the proposed use sought by the variance will (1) "substantially serve the public convenience and welfare, and (2) that it will not substantially or permanently injure the appropriate use of neighboring property."

In reference to the facts presented by appellees in evidence before the Board of Zoning Appeals, and as emphasized in Items 1 to 13, inclusive, in appellees' brief under the heading "The Record Affirmatively shows:" I fail to make judgment that such facts support an affirmative determination in favor of appellee-petitioner, Sam S. Schahet, as alleged in his petition that the intended use of the contemplated

variance "would substantially serve the public convenience and welfare."

Respondents further allege that evidence failed to establish that the proposed use sought by the variance would not "be detrimental to the use of their neighboring property by them, and that instead of serving the convenience and welfare, such proposed use would actually comit a dis-service to the public convenience and welfare" through additional traffic hazards for pedestrians and vehicles and added problems of juvenile misbehavior.

Appellee is further charged by his failure to present facts warranting the submission of his cause before the Board inasmuch as he did not conform to the provisions of the ordinance entitling him for a consideration of his variance sought.

On page 2 the majority opinion blandly asserts:

> "The relief sought by appellee, Schahet, was an exception pursuant to the terms of the Zoning Ordinance and not a variance, although *sometimes* the two terms have been used indiscriminately. 101 C. J. S. Zoning §271, p. 1034; §272, p. 1037; Am. Jur. Zoning §196, p. 1046 anno; 168 A. L. R. 13, p. 20." (My emphasis.)

In the above quotation if the term "sometimes" relating to "exception" and "variance" being used *indiscriminately* means anything, it appears that such application should have been attempted. And without a copy of the Ordinance in question, the assumption of the authority of the paragraph certainly places a strain on the imagination. (Our emphasis.)

Further, the opinion expressed the statement:

> "The conditions permitting an exception are those which are found in the ordinance itself. *Keeling* v. *Board of Zoning Appeals* (1947), 117

Ind. App. 314, 69 N. E. 2d 613, 101 C. J. S. Zoning §273, p. 1037."

Again the majority opinion failed to include the conditions permitting exceptions as indicated in the ordinance. These conditions, in my judgment, should have been specified.

It is well settled that administrative boards created by acts of our legislature possess such powers only that the General Assembly allocates, and no inference as to power or authority claimed by such boards are permissible. Administrative boards possess no power as courts of law.

Parties to this action take diametrically opposite views in reference as to whether the Zoning Board was required to prepare and set forth "findings" preparatory to rendering its decision in favor of the appellee. The judgment of the trial court follows:

## "JUDGMENT"

"This cause having been submitted to the Court March 18, 1957 for hearing and determination, and the Court having heard the evidence and arguments of counsel and having taken the cause under advisement, and now being duly advised in the premises, finds against the petitioners herein.

"The Court further finds that the decision of the Board of Zoning Appeals of the City of Indianapolis, entered October 26, 1956, sought to be reviewed herein, is legal in all respects and that there were no illegalities in the proceedings before, or in the decision of, said Board of Zoning Appeals; and that said decision should be wholly affirmed.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the decision of the Board of Zoning Appeals of the City of Indianapolis sought to be reviewed herein is legal in all respects, and that there were no illegalities in the proceedings before, or in the decision of said Board of Zoning Appeals.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said decision of the Board of Zoning Appeals of the City of Indianapolis be, and it is hereby, wholly affirmed."

No special findings of facts were indulged in by the trial court as to evidence nor any cognizance taken on Motion for Leave of Court to Amend Petition for Writ of Certiorari by Adding Supplemental Specification of Illegality by Appellant other than Granting such Motion.

Respondent strenuously argues that §53-777, Burns' Replacement, [1961 Supp.], and reading in part as follows:

. . . . .

"The board shall keep minutes of its proceedings, keep records of its examinations and other official actions and shall record the vote on all actions taken. All minutes and records shall be filed in the office of the board and shall be a public record. [Acts 1947, ch. 174, §76, p. 571; 1951, ch. 291, §4, p. 935.]"

and which Act amended §53-777, Burns' Ind. Stat., 1951 Replacement, reading in part as follows:

. . . . .

"The board shall keep minutes of its proceedings, keep records of its examinations and other official actions, prepare findings and record the vote on all actions taken. All minutes and records shall be filed in the office of the board and shall be a public record. [Acts 1947, ch. 174, §76, p. 571.]"

A notation following §53-777, Burns' 1951 Replacement, [1961 Supp.], *supra*, had an insertion by the compiler reading as follows:

"*AMENDMENT.* The 1951 amendment inserted in the first paragraph the words '*and applica-*

*tions for variances and exceptions.'"* (Our emphasis.)

No mention was made, however, by the compiler of the omission of the phrase "prepare findings" in the second paragraph thereof. Whether in redrafting the amendment of 1951 of §53-777, *supra*, the phrase "prepare findngs" was intentionally omitted or omitted through inadvertence is not of major importance.

We think it is of fundamental importance that the Board must find as a matter of fact that the use to be made as requested in the petition of variance will give service of public convenience and welfare. The granting of the same will neither substantially nor permanently reflect injury in the use of neighboring property by the owners thereof. It is essential that the Board, as previous decisions have indicated, must be furnished evidence for an approval of a variance that there be no diminution of value of surrounding properties; that a public benefit will be accomplished; that there be no injustice manifest; that the ordinance be not waived in any general particular. Evidence that fails to include all these elements is deleterious to the purposes of the statute.

We think that the evidence presented before the Board was insufficient to meet the requirement of the ordinance. Hence, as a corollary the decision of the court was irregular and illegal in regard thereto.

Petitioner is obligated to submit proof in compliance with requirements to be awarded a variance. Having failed therein, the variance should have been refused.

In the case at bar we are inclined to share the view of the appellants that it is a basic duty of any administrative agency possessing quasi-judicial capacity

when issuing decisions affecting substantial rights of interested parties to specify specific facts underlying a determination by such administrative agency. We are unimpressed with the contention of the appellees that the omission of the words "prepare findings" in Burns' §53-777, 1951 Replacement, [1961 Supp.], *supra,* could vitiate and render nugatory a fundamental principle of such long practical procedure necessitating finding of facts obligatory prior to the issuance of decisions.

If §53-777, Burns' 1951 Replacement, [1961 Supp.], *supra,* had intended to provide relief from a mandatory duty to prepare findings, it appears that such waiver to so do should have been clearly expressed. This was not done.

Hence, I am of the opinion that the Board of Zoning Appeals should have fortified itself with the approval of the Board of Works prior to a grant of variance sought by appellee and failing so to do, performed an illegal act; that the Board failed to affirmatively show by its decision that the proposed "buildings, structures and use will substantially serve the public convenience and welfare." Having omitted such affirmative showing, I conclude such failure of the Board to be illegal.

The Superior Court of Marion County by supporting the Zoning Board likewise committed error in its avoidance to require findings by the Board by a process of reasoning to which I deem appellants were entitled. To so do, a fundamental tenet of due process appears to have been disregarded.

In light of the above it is my opinion that the decision of the trial court is contrary to law. Therefore, I am unable to agree with the majority opinion that the case be affirmed.

NOTE.—Reported in 182 N. E. 2d 790.

Transfer denied, Achor, Acting C. J.; Jackson, C. J., dissents.

Bobbitt, J., not participating.