[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before this Court is an appeal from a final decision of the Public Utilities Commission Division of Public Utilities Carriers (hereinafter "PUC" or "Division") granting William E. West, III, (hereinafter "West") the authority to operate a towing service. The plaintiff, Rhode Island Public Towing Association, Inc., has filed this appeal seeking to overturn the PUC's final order issued on August 27, 1993. Jurisdiction is pursuant to R.I.G.L. 1956 (1988 Reenactment) § 42-35-15.
FACTS AND TRAVEL
On May 20, 1993, William E. West, III, d/b/a "Bill's Towing" filed an application with the PUC seeking a Certificate of Public Convenience and Necessity authorizing the operation of a vehicle towing service within Region II of Rhode Island, comprised of Barrington, Bristol, Jamestown, Little Compton, Middletown, Portsmouth, Newport, Tiverton, and Warren. The plaintiff filed a timely Notice of Protest on May 28, 1993. Pursuant to R.I.G.L. 1956 (1988 Reenactment) § 39-12-7, as amended, a PUC hearing officer conducted a hearing to determine whether West met the requirements proscribed by § 42-35-15 thus entitling him to a Certificate.
At the hearing, West proffered testimony in support of his application. West and four witnesses argued that there exists a need for more towers in Little Compton and that it would be convenient to the public if an additional towing service were rendered in the area. Specifically, West testified that he had six years of experience in the towing business and that he presently owned a tow truck and a car carrier with a wheel lift apparatus (Hearing Transcript at 6). Terry Quick, a lifelong resident of Little Compton and a member of the Little Compton Police Department from 1969 to 1978, also testified on behalf of West. Based on his personal and professional experiences, Quick concluded that not enough towing operators exist to service the rapidly growing population in that area. (Id. at 27). Similarly, former Little Compton Police Lieutenant, Bertrand A. Chretien, testified that the delay with which towers currently respond to the frequent number of accidents on the curvy roads of Little Compton and South Tiverton reflects the need for an additional tow operation. (Id. at 37, 38). Finally, Joseph Medeiros, Jr. and Douglas Waite, both in the auto repairs and parts businesses, respectively, expressed the need for more carriers to be available to tow wrecked vehicles to and from their businesses. (Id. at 45, 53).
In opposition to West's application, the plaintiff offered Notices of Protest from five protestants who contend that an adequate supply of towers is available to the Little Compton area, and thus, there is no need for an additional "certificated" tower. (Id. at 60). Mr. Quick testified that he "[had] to wait two hours as recently as two weeks ago for a truck . . . [and] finally took other means" of transporting his car. (Id. at 27). Mr. Chretien testified that it would be to the "police department's advantage to have another licensed truck available . . . especially if we got [sic] multiple car accidents." (Id. at 38).
On August 27, 1993, the PUC issued a Report and Order granting West a permit to operate a towing business in Region II of Rhode Island. (Report and Order at 3). It is from this final order that the plaintiff has made a timely appeal to this Court.
STANDARD OF REVIEW
This Court is granted jurisdiction to review final orders of the PUC pursuant to § 42-35-15 of the Administrative Procedures Act, G.L. 1956 (1988 Reenactment). Specifically, this Court's scope of review of such decisions is governed by § 42-35-15(g), which provides:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Accordingly, when reviewing an agency decision, the court must not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of the evidence.Costa v Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988). A reviewing court will give great deference to an agency's final decision. Blackstone Valley Electric Co. Public UtilitiesCommission, 543 A.2d 253 (R.I.), Cert. denied, 488 U.S. 995
(1980). Moreover, the court must affirm if there is substantial evidence in the record to support the decision and no other violation under § 42-35-15 is shown. R.I.G.L. § 42-35-15.
Conversely, if the agency's decision is clearly erroneous in view of the reliable, probative and substantial evidence contained in the whole record, the reviewing court may overturn it. Milardo v. Coastal Resources Management Council,434 A.2d 266, 270 (R.I. 1981). Only if the agency's factual conclusions are "completely bereft of competent evidentiary support in the record" will the court reverse. Sartor v. Coastal ResourcesManagement Council, 542 A.2d 1077, (R.I. 1988). If there is an interpretation or application of law at issue, however, the reviewing court is free to make its own determinations. Carmodyv. R.I. Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986); Turner v. Dept. of Employment Sec. B. of Rev.,479 A.2d 740, 742 (R.I. 1984). Thus, absent any judicial review of questions of law, the court's review is confined to the hearing record. R.I.G.L. § 42-35-15(f).
THE AGENCY'S DECISION
Pursuant to its powers enunciated in § 42-35-1(c), the PUC issued a Certificate of Public Convenience and Necessity authorizing defendant-West to operate a towing service in Region II of Rhode Island. In its decision, the PUC found that the public need and convenience would best be served by permitting an additional tower to operate in the area.
The PUC's final determination of an applicant's petition is governed by R.I.G.L. § 39-12-7. After reviewing the hearing officer's recommendatory order and findings of fact, the Division administrator may approve the Order if two criteria have been met. The administrator must find that (1) ". . . that the applicant is fit, willing and able properly to perform the service proposed. . .", and (2) ". . . that the proposed service . . . is or will be required by the present or future public convenience and necessity. . .". Id. Thus, the administrator must be satisfied that the applicant has put forth sufficient evidence to meet the foregoing test. At issue here is whether there is substantial evidence in the record which supports the Division's order.
FITNESS
The first question this Court must address is whether the PUC had before it sufficient evidence upon which it could predicate the defendant's fitness to operate a towing service. The Division found that the defendant met the requirements as proscribed by §39-12-7, and after reviewing the record, this Court agrees. The hearing officer heard testimony from Mr. West that he had six years of experience in the towing business, was adequately equipped to perform, and was informed as to the proper insurance coverage required by law. (Report and Order at 2). The hearing officer also heard testimony in favor of West's character from Lt. Chretien who testified that ". . . he knows West personally and regarded him as a responsible individual." (Id. at 3).
The hearing officer found this testimony regarding West's fitness to be convincing and credible. Based upon West's application and the evidence before it, the Division found that ". . . the statutory requirements have been met." (Id. at 4). In view of the foregoing testimony and the record on the whole, this Court is satisfied that the Division officer was presented with substantial evidence such that it could find the defendant fit, willing and able to perform the proposed service, as proscribed by § 39-12-7.
PUBLIC NECESSITY
The plaintiff contends that defendant-West failed to establish the public necessity element set forth in § 39-12-7. In support of its argument, the plaintiff cites Capaldo v. PublicUtilities Hearing Board, wherein the court found "what is conducive to the general public need, convenience, interest, safety, protection and welfare is always the true test " of what constitutes `public convenience and necessity.' (See Plaintiff's Brief at 8, citing Capaldo v. Public UtilitiesHearing Board, 70 R.I. 356, 360, 38 A.2d 649 (1944).) It was also held, however, in the pivotal case of Abbott v. PublicUtilities Commission that "[p]ublic service . . . is the test in granting a certificate of public convenience and necessity."Abbott v. Public Utilities Commission, 48 R.I. 196, 136 A. 490
(1927).
Although the foregoing factors must be considered when defining public necessity, this Court would be remiss in adhering to any one steadfast test of public necessity. Instead, it is critical that the definition of "public necessity" remain malleable and responsive to the needs of the particular community in question. As our Supreme Court has reiterated throughoutAbbott's progeny, ". . . `public convenience and necessity' has no well-defined meaning." Domestic Safe Deposit Co. v.Hawksley, 111 R.I. 224, 227, 301 A.2d 342, 344 (1973). This Court is also mindful that "the definition of need is a relative one." Id. at 227, 301 A.2d at 344. . Given the flexible nature of the meaning of `public necessity' and the ample testimony on record, this Court finds that the Division had before it substantial evidence to conclude that an additional towing operator is both convenient and necessary to the Little Compton community.
The plaintiff urges that the public of Little Compton is adequately served by the present number of towers in the area. (See Tr. at 32). In particular, the plaintiff contends that West's witnesses misperceive a need for more towing services because they are "unaware of the eleven towers . . . capable of towing in that area." (Id. at 68). As further evidence of the lack of need of an additional tower, the plaintiff notes that a company in the Little Compton area went out of business and there is ". . . a number of operators in the area who can handle [bus tows] . . .". (Id. at 69).
West, however, proffered testimony at the hearing that showed the present number of towers in the Little Compton area is not sufficient to serve the public need. Mr. Quick, Mr. Medeiros, and Mr. Chretien all cited specific instances when they or someone they knew were unable to obtain a towing service when it was needed. Significantly, Mr. Quick testified that he "had to wait two hours as recently as two weeks ago for a truck . . ." and finally resorted to "other means" to transport his car, and on another occasion, the operator arrived the next morning to tow his car. (Id. at 31, 69). Mr. Medeiros, who repairs exclusively Little Compton school buses, also testified that he had difficulty obtaining a tow truck when buses broke down in and around Little Compton. (Id. at 45-6). Finally, Mr. Chretien testified that it would be ". . . to the police department's advantage to have another license truck available . . . especially if we got [sic] multiple car accidents." (Id.
It is clear from the Division's Report and Order that it found these latter contentions to be more persuasive. The hearing officer specifically found that the defendant's proffered testimony ". . . establishes that there is a perceived need for an additional tower in Little Compton and South Tiverton." (Report and Order at 4). The law is well-settled that "[t]he weight to be given to any evidence rests with the sound discretion of the hearing officer." The Environmental ScientificCorporation v. Durfee, 621 A.2d 200, 206 (1993). It is also well-settled that in granting a certificate of public convenience and necessity, "the court may consider such factors as competitive stimulation and anti-monopoly prophylaxis." DomesticSafe Deposit Co., 111 R.I. at 228, citing Short Line, Inc. v.United States, 290 F. Supp. 939 (D.R.I. 1968). The plaintiff urges that the defendant's towing company is not necessary to the public because a sufficient number of services exists. The record is replete, however, with evidence to the contrary. The evidence presented to the hearing officer led the Division to find unequivocally that ". . . the applicant clearly demonstrated a local need." (Report and Order at 5). It is evident from the testimony of record and from the PUC's findings that the public is best served by a flourishing spirit of competition.
The Division responded to the community's "perceived need" by granting West's towing license. Furthermore, in finding that public necessity existed "despite a limited showing of need" (Report and Order at 5), the PUC's decision reaffirms the basic premise that ". . . protecting existing investments . . . from even wasteful competition must be treated as secondary to the first and most fundamental obligation of securing adequate service for the public. . .". Yellow Cab Co. v. Public UtilitiesHearing Board, 73 R.I. 217, 54 A.2d 28 (1947). In keeping with this premise, the PUC's decision places the community's needs above monopolistic protection of existing towing operations.
CONCLUSION
This Court's determination of the case at bar hinges upon whether, as is required by § 42-35-15, there is substantial evidence in the record which supports the Division's order. Our Supreme Court has defined "substantial evidence" as "more than a scintilla but less than a preponderance." Apostolou v.Genovesi, 120 R.I. 501, 508, 388 A.2d 821, 824-5 (1978). After careful examination of the entire record, this Court finds that the PUC's decision was clearly supported by "probative, reliable and substantial evidence. . ." as is statutorily required. Accordingly, the August 27, 1993 decision of the Public Utilities Commission is hereby affirmed.
Counsel shall prepare the appropriate order for entry.